## County of Winnebago v. City of Rockford.

1. EVIDENCE—*Competency of Statements by Patients to Their Physicians.*—The rule of law as to the admission of statements by patients to their physicians concerning their disease, must be confined to such as are made at the time of the sickness from which the patient is suffering. Statements of such patients after their recovery are not competent.

2. SAME.—*Statements of Claims Against Counties—Competency of.*—For the purpose of showing that the law which requires the presentation to the county board of an itemized verified statement of a claim against the county before bringing suit has been complied with, it is competent to read such statement in evidence.

3. SAME—*Physician's Services—Cross-examination.*—Where a physician, on his direct examination, testified as to the value of services attending upon small-pox patients, it is not reversible error to allow him on cross-examination, in reply to the question, "Would you take a case like that out there in the pest house for twice the regular charges?" to state that he would not take such a case, outside of his family patients at any figure.

County of Winnebago v. City of Rockford.

**Assumpsit.**—For services, etc. Appeal from the Circuit Court of Winnebago County; the Hon. JAMES SHAW, Judge, presiding. Heard in this court at the December term, 1894. Affirmed. Opinion filed May 28, 1895. Rehearing denied December 5, 1895.

ARTHUR H. FROST, attorney for appellant, contended that it is permitted to a physician to give his opinion as to a person's disease, judging both from subjective and objective examination. No proper diagnosis can usually be made without both such examinations. Where a medical expert had read the deposition of the plaintiff detailing minutely the injuries, and bodily condition claimed to have resulted to him from an injury, which he related, it is proper to ask him, from the knowledge gained by reading the deposition, his opinion as to plaintiff's condition at the time the deposition was made, and as to the cause of that condition. Gilman v. Town of Strafford, 50 Vt. 726.

A physican may give his opinion as to the actual condition of a patient whom he has visited. Knox v. Wheelock, 56 Vt. 200; Spear v. Hiles, 67 Wis. 367; Brush v. Jackson, 24 Ala. 273.

Or whose symptoms and condition have been described by others. Livingston v. Com., 14 Gratt. 592; Cooper v. State, 23 Texas 330.

He may testify to a statement or narrative given by a patient in regard to his condition, symptoms, sensations and feelings, both past and present, when they are necessary to enable him to give his opinion as an expert witness. Cleveland, etc., R. R. Co. v. Newell, 104 Ind. 264; Yeatman v. Hart, 6 Hump. (Tenn.) 374; Looper v. Bell, 1 Head (Tenn.) 373.

R. K. WELSH, attorney for appellee, contended that statements made to a physician in his professional capacity are competent when descriptive of existing symptoms or pains, although they are not admissible when mere narratives of past occurrences. Cleveland, etc., R. R. Co. v. Newell, 104 Ind. 264; Murphy v. R. R. Co., 102 Barb. 125; Kent v. Lincoln, 32 Vt. 591; Barber v. Merriam, 11 Allen 322; Looper

v. Bell, 1 Head 373; Hatch v. Fuller, 131 Mass. 574; R. R. Co. v. Jones, 36 Kan. 769.

The rule is that declarations of an injured person, indicative of existing pain or suffering, are competent, although narratives of past occurrences are not. Turnpike v. Andrews, 102 Ind. 138; Ry. Co. v. Wood, 113 Ind. 554; Roos v. Loan Co., 132 Mass. 439; McKeique v. City of Janesville, 31 N. W. Rep. 301; State v. Davidson, 30 Vt. 377.

It would not be proper to give in evidence a conversation with an injured party, in which that party related her past suffering or injury by way of narrative, but it would be proper for a witness to relate what an injured party had said as to her condition, particularly of concealed or internal suffering as it existed at the time the statements or exclamations of suffering were made. Chicago, St. L. & P. R. Co. v. Spilker, 33 N. E. Rep. 283; Board v. Laggett, 115 Ind. 544.

This is a rule of necessity, and is not to be considered beyond the necessity upon which it is founded, viz.: to produce evidence of the condition of internal and unseen organs of the human body, and to furnish some expression of pain and suffering which can not be successfully measured in any other way. Chapin v. Marlborough, 9 Gray 244; Cleveland, C., C. & I. Ry. Co. v. Newell, 33 N. E. Rep. 283; Louisville, M. A. & C. R. Co. v. Wood, 14 N. E. Rep. 581; Underhill on Evidence, 70.

MR. PRESIDING JUSTICE LACEY DELIVERED THE OPINION OF THE COURT.

This case was brought by appellee against the appellant to recover for alleged medical treatment, board, medicine and nursing for four persons which appellee claims it furnished under circumstances which entitled it to recover from the appellant the value thereof, under section 24 of chapter 107 of the Revised Statute of Illinois, which provides as follows: "When any non-resident or any person not coming within the definition of a pauper of any county or town shall fall sick, not having money or property to pay

his board, nursing or medical aid, the overseers of the poor of the town or precinct in which he may be, shall give or cause to be given to him such assistance as they may deem necessary and proper, or cause him to be conveyed to his home subject to such rules and regulations as the county board may prescribe; and if he shall die, to cause him to be decently buried." The cause was tried before a jury and resulted in a verdict for the appellee for $539.23, about one-half of the bill of expense incurred by appellee and sworn to and presented to appellant for payment. The health department of appellee, having been notified that the persons in question were attacked with the small-pox, they being residents of appellee and also of the county of Winnebago, through its executive officer, the mayor, notified appellant through its proper officer that the persons in question were without medical attendance and without means, and consequently a proper county charge, and that if the appellant did not take charge of the cases at once the city would employ a physician to take charge of the patients and look to the county for the necessary expenses. The county authorities refused to have anything to do with the cases and the appellee then, through its mayor, directed a physician to take charge of the cases, which he did, and rendered such services as were necessary from time to time until the patients were removed from the hospital, being about forty-one days. One of the patients, a child, died while at the hospital and was buried.

It is complained that the weight of the evidence was manifestly against the verdict for several reasons; first, that the evidence was not sufficient to show that the supposed small-pox patients were proper subjects for county charge under the statute, and also that the proof did not sustain the verdict as to its amount, and also, that the supposed small-pox patients were not afflicted with the small-pox but were simply suffering with an attack of the chicken-pox.

We have examined the evidence carefully and find the verdict was amply sustained on all the questions of fact, and think the verdict was moderate in amount. It clearly appears that the patients were destitute persons and had not

sufficient money or property to pay their board or medical aid, and were therefore proper subjects to be cared for by the county under the statute. It is insisted that the court excluded certain evidence of Doctor Hughes and Doctor Franklin, tending to show that the patients were not afflicted with the small-pox but with chicken-pox. Doctor Hughes testified that he had talked with the patients in regard to their symptoms after they were well and discharged, concerning their cases when they were sick and being taken sick, and they had given him a full account of it, and from those statements and examination of them some time after they were discharged from the hospital, he could not tell exactly what ailed them, but his opinion was that they might have had varicella (chicken-pox), or they might have had the varioloid.

Doctor Franklin was asked his opinion, based upon what the patients told him after they were discharged, as to their diseases; and also upon examination of them after they were discharged, what his opinion was as to what ailed them; this the court refused to let him answer, and also rejected the testimony of Doctor Hughes. The testimony of Doctor Hughes, and proposed testimony of Doctor Franklin, was based and intended to be based on both subjective and objective examinations; subjective meaning what he learned from the patients themselves, and objective, what he learned from the examination of the persons after recovery. We think that the evidence and proposed evidence of these doctors was properly rejected. The rule of law in regard to what patients may tell physicians concerning their disease, must be confined to such statements as are made at the time of the sickness under which the person is laboring, or else their statements would be regarded as mere hearsay evidence. In Greenleaf on Evidence, Vol. I, par. 102, is given the rule as follows: " Wherever the bodily or mental feelings of an individual are material to be proved, the usual expressions of such feelings made at the time in question, are original evidence; * * * so, also, the representation by a sick person of natural symptoms and effects of the malady under which he is laboring at the time."

It would appear, therefore, that the evidence of Hughes, and the proposed evidence of Franklin, was and was proposed to be, based upon an improper basis in part at least, that is, in so far as it rested upon the mere statements of the patients, long after they had recovered.

We see no error in the rejection of this testimony.

It is complained by the appellant that Doctor Rohr was permitted, against its objections, to be asked the following question: "Would you take a case like that out there in the pest house for twice the regular charges?" And the witness answered, "I would not want to take a case outside of my own family patients; I would not—for no figures." Doctor Rohr had been put on the stand by appellant and testified as to the rates charged by physicians in small-pox cases in Rockford, and had testified that it was double the amount for a visit charged for ordinary cases of sickness, which was $1.50. The question and answer complained of were simply cross-examination; and the evidence was simply presented as going to the credibility of the witness and not introduced as original evidence. We therefore think it was not improper, but if so, not seriously damaging to the appellant, and in no event would be sufficient grounds for a reversal. It is objected also that appellee was permitted to read in evidence exhibit "B," and the affidavit of the city clerk to the bill; the affidavit says the county is indebted in the sum of $1,078.46; that the items of the bill are just and true. There was no error in this. The law requires that a statement of this kind should be presented to the county board before the date upon which the suit should be commenced, and it is proper to show that the law has been complied with in that particular; and in addition to this consideration the record shows the appellant assigned as a cause for a new trial, that "no itemized bill was presented to the county board, as the law required prior to bringing suit." Although there may have been some slight errors committed by the court below, there were none of sufficient importance to require a reversal.

The judgment of the court below is therefore affirmed.